766 P.2d 701

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Donald Kenneth FETTERLY, Defendant–Appellant.**

**Donald Kenneth FETTERLY, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**Nos. 16540, 16541.**

Supreme Court of Idaho.

Sept. 9, 1988.

Dissent on Denial of Rehearing Dec. 13, 1988.

232

Van G. Bishop, Nampa, for plaintiff-respondent.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen., Boise (argued), for defendant-respondent.

BISTLINE, Justice.

Donald Kenneth Fetterly was convicted of first degree murder, burglary, and grand theft. The trial judge sentenced him to death. His conviction and sentence were affirmed on direct appeal. *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1986). Fetterly now contends that the district court erred in (a) denying his petition for post conviction relief, (b) denying his Rule 35 motion for a reduced sentence, and (3) in denying his Rule 25 motion to disqualify the trial judge from post conviction proceedings. In *State v. Beam*, 115 Idaho 208, 766 P.2d 678 (1988), the appellant advanced very similar arguments where were rejected by this Court. On the basis of that authority we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fetterly was convicted of first degree murder, burglary, and grand theft. His co-defendant, Karla Windsor, was convicted of the same. Judge Lodge sentenced both to death. Windsor's conviction was affirmed but this Court held that the death sentence was excessive and disproportionate, and therefore vacated the death sentenced and remanded for resentencing. *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1986). Thereafter, Judge Lodge disqualified himself from further proceedings in *Windsor*. Judge Lodge reasoned that:

> [I]t was and still is the conclusion of this court that these mitigating facts do not outweigh the aggravating facts.... Therefore it is the decision of this court to respectfully disqualify myself from

any further involvement in these matters.

R., at 127(j).

Fetterly then moved to disqualify Judge Lodge from considering his post conviction petition and Rule 35 motion on the ground that being unable to apply the mandate of this Court in *Windsor,* Judge Lodge could not fairly dispose of the contention that proportionality required the reduction of Fetterly's sentence. The motion was denied.

The primary thrust of Fetterly's Rule 35 motion was that the death sentence imposed by Judge Lodge was not proportional in light of *Windsor, supra,* and *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1986). In regard to the post conviction petition, Fetterly argued that the 42–day limit imposed to proceed with a post conviction proceeding in capital cases, as opposed to the five year limit in non-capital felony cases, violates equal protection. The Rule 35 motion and the petition for post conviction relief were denied.

## II. THE PETITION FOR POST CONVICTION RELIEF

### A. THE *RES JUDICATA* RULING

Fetterly urged numerous grounds for reversal in his petition for post conviction relief.[1] The district judge held that the issues raised in the petition were barred because of the *res judicata* effect of Fetterly's direct appeal. *State v. Fetterly, supra.*

■ An application for post conviction relief is a special proceeding, civil in nature, distinct from the criminal proceeding which led to the conviction. *State v. Beam, supra,* 115 Idaho at 210, 766 P.2d at 680, citing *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986). Because the issues raised in the petition for post conviction relief were adjudicated on direct appeal, *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1986), we find no error in the district court's *res judicata* ruling. *See*

*Kraft v. State,* 100 Idaho 671, 673, 603 P.2d 1005, 1007 (1979) (former adjudication concludes parties and privies as "to every matter offered and received.").

### B. NEW AUTHORITY FROM THE SUPREME COURT OF THE UNITED STATES

■ In regard to the *Miranda* issue raised on direct appeal, Fetterly contends that two new U.S. Supreme Court cases mandate a reversal of his conviction. On Fetterly's direct appeal, this Court held that unwarned but uncoercive questioning of Windsor made outside the presence of Fetterly, after which time Windsor conferred with Fetterly, resulting in an inculpatory joint statement, did not disable Fetterly from waiving his rights and confessing after he had been given his *Miranda* warnings. *State v. Fetterly, supra,* 109 Idaho at 770, 710 P.2d at 1206.

Prior to his arrest for murder, Fetterly and Windsor had been charged with fraudulent use of a credit card. A public defender was appointed to represent them, both posted bail and were released. Fetterly now contends that he could not waive his *Miranda* rights as to the murder charge because his sixth amendment right to counsel had attached on the fraud charge. In support he relies on two new U.S. Supreme Court cases, *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), and *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). These cases are clearly inapposite. In *Moulton,* the defendant retained counsel after the state initiated criminal charges. Subsequently, the police elicited incriminating statements from the defendant through an undercover informant, which were admitted in evidence at trial. The Supreme Court reversed the conviction, holding that the "Sixth Amendment is violated when the state obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." 106 S.Ct. at 487.

---

1. The arguments raised include *Miranda,* seventh amendment, felony-murder, and venue issues.

Fetterly, however, misses the point of the decision. *Moulton* would apply if the incriminating statements resulting from questions after his murder arrest were used against him on the fraud charge. The converse is not true: the right to counsel had not yet attached on the murder charge. As Justice Brennan noted, "Incriminating statements pertaining to other crimes [here, murder], as to which the sixth amendment right has not attached, are, of course, admissible at a trial of those offenses." 106 S.Ct. at 490, n. 16.

In *Jackson* the Court held that if police initiate interrogation after the defendant's assertion of his right to counsel, any subsequent waiver of the right is invalid. 106 S.Ct. at 1411. However, Fetterly did not assert his right to counsel on the murder charge. Thus, just because he asserted his right to counsel three days earlier on a fraud charge, he cannot bootstrap that assertion to the murder charge. Consequently, contrary to Fetterly's contentions, the new sixth amendment cases from the Supreme Court of the United States do not mandate reversal.[2]

## III. THE MOTION TO DISQUALIFY

■ Fetterly, like Beam, argues that the trial judge should have disqualified himself from presiding over the post conviction proceeding and the I.C.R. 35 motion for reduction in sentence. Whereas Beam based his claim of bias on the trial judge's refusal to sentence Beam's co-defendant Scroggins upon remand after this Court found Scroggins' death sentence excessive and disproportionate,[3] Fetterly bases his claim on the trial judge's refusal to sentence his co-defendant Windsor on remand after this Court found Windsor's death sentence excessive and disproportionate.[4]

In *Beam* it was stated:

Every trial judge who rules upon a post conviction review proceeding or an I.C.R. 35 motion to reduce sentence will previously have pre-judged the matter, often formed extremely strong opinions as to the sentence which should be imposed, and will no doubt be convinced that the procedure followed and the sentence imposed was correct, particularly where the trial court proceedings have been affirmed on appeal by this Court. It would be an unusual case in which a trial judge, when called upon to rule on an I.C.R. 35 motion to reduce sentence, would not approach the case on the basis that the sentence imposed was correct, and require the defendant to shoulder

---

2. Recently the United States Supreme Court decided *Arizona v. Roberson*, —— U.S. ——, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), which does not alter our analysis. In *Roberson*, the defendant was arrested at the scene of a just-completed burglary. He was subsequently advised of his *Miranda* rights and stated that he wanted a lawyer. Three days later, without an attorney yet appointed, a different officer obtained incriminating statements from Roberson about *another* unrelated burglary. The Court held that *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), bars police-initiated interrogation following a suspect's request for counsel in the context of a separate investigation.

*Roberson* is clearly distinguishable for two reasons. First, unlike Roberson, Fetterly was released on bail after he was charged with fraudulent use of a credit card. In *Roberson* the Court stated that where:

a period of three days elapsed between the unsatisfied request for counsel and the interrogation about a second offense, there is a serious risk that the mere repetition of the

*Miranda* warnings would not overcome the presumption of coercion that is created by prolonged police custody.

—— U.S. ——, at ——, 108 S.Ct. 2093, at 2100. Fetterly, by contrast, was not subjected to such a coercive environment.

Second, unlike *Roberson*, the trial court appointed counsel for Fetterly on his initial charge. Instead of remaining in custody without the benefit of counsel's advice, Fetterly had the benefit of counsel and was released on bail; his request for court-appointed counsel was timely granted. Thus, when Fetterly was subsequently arrested for murder, he was familiar with his rights afforded by the criminal system and aware that counsel could be appointed for him. Fetterly was in no way disabled or coerced into waiving his rights and confessing to murder after he was given his *Miranda* warnings.

3. *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1986).

4. *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1986).

"the burden of showing the original sentence was unusually severe." *State v. Martinez,* 113 Idaho 535, 536, 746 P.2d 994, 995 (1987). Coming to the case with that frame of mind does not constitute bias or prejudice within the meaning of I.C.R. 25(b)(4) and does not require disqualification of the trial judge. In this case the judge in question had presided at the trial of both Beam and Scroggins. He had heard all of the evidence of this brutal murder and raping of an innocent thirteen year old girl. He had presided at the sentencing proceedings in which extensive mitigation and aggravation evidence was presented to the court. Based upon all of that evidence, the trial court had arrived at the judgment that the aggravating circumstances outweighed the mitigating circumstances and served for only the most heinous of first degree murders. The very nature of the sentencing process in capital cases requires a trial judge to form strong opinions and convictions that the defendant merits the most severe penalty. It would be extremely unlikely and no doubt improper for a trial court to impose a death penalty unless it had formed the strong opinion and belief that the defendant had no redeeming features, and that the circumstances of the particular case justified the imposition of this most serious penalty known to the law. Accordingly, when a trial judge is called upon to rule upon a petition for post conviction relief, or a motion for reduction of sentence under I.C.R. 35, particularly in a case where the death penalty has been imposed, he comes to the case after having already formed strong opinions and beliefs regarding the atrocious nature of the crime, the unredeemable character of the defendant, and the need of society to impose this most serious of criminal penalties. A trial court is not required to erase from his mind all that has gone before, and indeed, it is doubtful that any human being could. Rather, when faced with an I.C.R. 25(b)(4) motion to disqualify for bias and prejudice in a post conviction or I.C.R. 35 proceeding, the trial judge need only conclude that he can properly perform the legal analysis which the law requires of him, recognizing that he has already pre-judged the case, formed strong and lasting opinions of the worth of the defendant and the sentence that ought to be imposed to punish the defendant and protect society.

We conclude that the trial court did not err in refusing to disqualify himself from participating in the post conviction and I.C.R. 35 sentence reduction proceedings in this case merely because he had disqualified himself from further participation in the resentencing of appellant Beam's co-defendant Scroggins, and in the process had expressed strong disagreement with this Court's action in *State v. Scroggins, supra,* which vacated Scroggin's death penalty sentence.

*State v. Beam, supra,* 115 Idaho at 215, 766 P.2d at 685. Fetterly's case is not distinguishable from *Beam,* and a majority of the Court have concluded that *Beam* is applicable and controlling.

### IV. THE CONSTITUTIONALITY OF I.C. § 19–2719

█ Fetterly argues that I.C. § 19–2719 unconstitutionally deprives him of equal protection of the laws because it requires post conviction petitions in death penalty cases to be filed within 42 days of the judgment imposing death, whereas in noncapital cases post conviction petitions may be filed within five years from expiration for the appeal. *See* I.C. § 19–4902. This argument was also rejected by a majority of the Court in *Beam,* and is controlling here. The majority disposition in that case was that:

Under the rational basis test, which is the appropriate test here, the legislature's action need only have a rational basis. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Leliefeld v. Johnson,* 104 Idaho 357, 374, 659 P.2d 111, 128 (1983) ("Under the 'rational basis' test which is generally appropriate to use when reviewing statutes which impact

social or economic areas, the question becomes whether the classification 'advances legitimate legislative goals in a rational fashion.' "). The validity of I.C. § 19–2719 must be tested on that standard. In applying the rational basis standard, we begin with the understanding that (1) the legislature may reasonably exercise its power to define crime and fix punishment by classifying criminals with reference to the heinous nature or gravity of the crime they committed, *see Malloroy v. State,* 91 Idaho 914, 435 P.2d 254 (1967), and (2) that legislative declarations of public purpose are afforded great deference in determining the validity of legislation under the equal protection clause in the United States and Idaho Constitutions. *See Idaho Water Resources Board v. Kramer,* 97 Idaho 535, 548 P.2d 35 (1976).

In this case the legislature clearly printed out a rational basis of I.C. § 19–2719 in the statement of purpose which accompanied the enactment of the statute. The underlying legislative purpose behind the statute stated the need to expeditiously conclude criminal proceedings and recognized the use of dilatory tactics by those sentenced to death to 'thwart their sentences.' The statute's purpose is to 'avoid such abuses of legal process by requiring that all collateral claims for relief ... be consolidated in one proceeding....' We hold that the legislature's determination that it was necessary to reduce the interminable delay in capital cases is a rational basis for the imposition of the 42–day time limit set for then I.C. § 19–2719. The legislature has identified the problem and attempted to remedy it with a statutory scheme that is rationally related to the legislative purpose of expediting constitutionally imposed sentences. Accordingly, I.C. § 19–2719 does not violate the defendant's constitutional right to equal protection, and the trial court correctly denied Beam's post conviction petition.

*State v. Beam, supra,* at 213, 766 P.2d at 683. Accordingly, we find no error.

## V. CONCLUSION

The judgments of the district court are affirmed.

SHEPARD, C.J., and BAKES, HUNTLEY and JOHNSON, JJ., concur.

## DISSENT ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting on denial of petition for rehearing.

On the direct appeal and statutorily mandated review of his death sentence, *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1986) (Fetterly I), a majority of this Court rejected Fetterly's argument that his sentence of death was disproportionate to the penalty imposed in similar cases. As will be noticed, the Court's opinion on Fetterly's appeal from denial of his petition for post-conviction relief, to which this will be appended, held that the numerous grounds argued in the petition were *res judicata* because they were, or should have been, adjudicated on direct appeal. *State v. Fetterly,* 115 Idaho 231, 766 P.2d 701 (1988) (Fetterly II).

In his petition for rehearing, Fetterly concedes the existence of that *res judicata* holding, but nevertheless urges that his sentence is disproportionate in the light of *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1986), the opinion in that case being decided *after* issuance of the Court's opinion on Fetterly's direct appeal and statutorily mandated automatic review. Although it is readily seen that on Fetterly's direct appeal, proportionality in his case could not be compared to the then as yet undecided *Windsor* case, nevertheless when *Windsor* was decided on direct appeal, proportionality as between those two co-defendants who killed Sterling Grammer was only inferentially passed upon. The opinion for the Court in *Windsor* noted that, although Windsor's participation in the killing of Sterling Grammer was co-extensive with Fetterly's, "Windsor's background and individual characteristics serve to make the death penalty excessive in this (her) case." The majority opinion noted her cooperation

with authorities, lack of a formal criminal record, conducting herself as an ideal inmate, and compassion for fellow inmates.[1]

Accordingly, my vote is that the Court should grant rehearing confined to the one narrow issue, *i.e.*, the proportionality of Fetterly's death sentence in light of the sentencing decision in *Windsor*, an issue which has not heretofore been addressed by this Court. Otherwise, Fetterly's background and post-conviction conduct and character traits are not equally considered with his co-defendant's.

---

**1.** Having dissented in *Windsor*, I continue to adhere to a different view, and note that my contrary views were shared by the district judge who sentenced both defendants, and thereafter recused himself rather than resentence Karla Windsor, as has been covered in subsequent death penalty cases.