822 P.2d 523

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Richard A. LEAVITT, Defendant–Appellant.**

**No. 18533.**

Supreme Court of Idaho,
Twin Falls, March 1991 Term.

Nov. 27, 1991.

Rehearing Denied Jan. 23, 1992.

David N. Parmenter, Blackfoot, for defendant-appellant.

Larry J. EchoHawk, Idaho Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent. Lynn E. Thomas argued.

BOYLE, Justice.

In this criminal case we are called upon to determine whether the death penalty was properly imposed upon Richard A. Leavitt. In 1985, Leavitt was convicted of the first degree murder of Danette Elg in Blackfoot, Idaho, and the district court imposed the death penalty. In *State v. Leavitt*, 116 Idaho 285, 775 P.2d 599 (1989) (*Leavitt I*), this Court affirmed the conviction, the finding of a statutorily defined aggravating circumstance, and that the sentence was not disproportionate or excessive. However, the death penalty sentence

was reversed because the district court had failed to adequately weigh the cumulative mitigating circumstances against each aggravating circumstance and, because of circumstances unique to this case, failed to consider alternative sentences. *Id.*, 116 Idaho 285, 294, 775 P.2d 599, 608 (1989).

In *Leavitt I*, we held:

> Pursuant to I.C. § 19–2827, we determine that the sentence herein was *not* imposed under the influence of passion, prejudice or other arbitrary factors; that the evidence supports the finding of a statutory aggravating circumstance (I.C. § 19–2515); and that the sentence of death is *not* excessive or disproportionate to the penalty imposed in similar cases.
>
> For all of the above considerations, we affirm the judgment of conviction of first degree murder, but we reverse the trial court's imposition of the death penalty and remand to the trial court for further consideration in light of this opinion. The trial court is, in its discretion, authorized to convene additional hearings and obtain additional information and/or testimony.
>
> Affirmed in part, reversed in part.

116 Idaho at 294, 775 P.2d at 608 (emphasis original).

Upon remand, the district court conducted a sentencing hearing wherein additional evidence was presented. Following the hearing, the district court weighed all the mitigating factors against the single I.C. § 19–2515(g)(5) aggravating circumstance,[1] contemplated alternative sentencing possibilities and, for a second time, sentenced Leavitt to death. After thoroughly considering the record, we affirm.

---

1. I.C. § 19–2515(g)(5) provides "[t]he murder was especially heinous, atrocious or cruel, manifesting exceptional depravity."

2. In *Osborn*, we adopted the language set forth by the Nebraska Supreme Court in *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977) *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158, *reh. denied*, 434 U.S. 961, 98 S.Ct. 496, 54 L.Ed.2d 322 (1977). The court stated:

## I.

Leavitt argues that the aggravating circumstance set forth in I.C. § 19–2515(g)(5), and found to exist by the district court and by this Court in *Leavitt I*, is unconstitutionally vague and violates his Eighth Amendment rights. Specifically, Leavitt asserts the language "exceptional depravity" does not provide sufficient direction to the sentencing court as required by *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). We disagree. An Eighth Amendment claim based upon vagueness examines whether the challenged aggravating circumstance, together with any limiting instruction, adequately channels the discretion of the sentencing body in order to prevent the imposition of an arbitrary and capricious sentence. *See Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This Court has previously addressed and upheld the constitutionality of I.C. § 19–2515(g)(5), including the Eighth Amendment vagueness claim presently asserted by Leavitt. *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Lankford*, 116 Idaho 860, 781 P.2d 197 (1989); *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989); *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981). In *Osborn*, we adopted and applied limiting language applicable to the "exceptional depravity" language in I.C. § 19–2515(g)(5) to ensure this particular aggravating circumstance would be "sufficiently definite and limited to guide the sentencing court's discretion in imposing the death penalty." 102 Idaho at 418, 631 P.2d at 200.[2] This language was

> In interpreting this portion of the statute, the key word is "exceptional." It might be argued that every murder involves depravity. The use of the word "exceptional," however, confines it only to those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence. *Id.*, 197 Neb. at 566, 250 N.W.2d at 891.

thereafter upheld as constitutional in *Charboneau*, 116 Idaho at 152, 774 P.2d at 322, and *Pizzuto*, 119 Idaho at 771, 810 P.2d at 709.

In addition, given the Idaho legislature's statutory directive that a defendant be sentenced by a district judge rather than by a jury, Leavitt's reliance upon *Godfrey* and *Maynard* is misplaced. In addressing a similar claim, the United States Supreme Court in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511, (1990), recently stated:

> *Maynard v. Cartwright* and *Godfrey v. Georgia*, however, are distinguishable in two constitutionally significant respects. *First, in both Maynard and Godfrey the defendant was sentenced by a jury* and the jury either was instructed only in the bare terms of the relevant statute or in terms nearly as vague. Neither jury was given a constitutional limiting definition of the challenged aggravating factor. Second, in neither case did the State appellate court, in reviewing the propriety of the death sentence, purport to affirm the death sentence by applying a limiting definition of the aggravating circumstances to the facts presented....
>
> When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process. It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face. That is the import of our holdings in *Maynard* and *Godfrey*. *But the logic of those cases has no place in the context of sentencing by a trial judge. Trial judges are presumed to know the law and to apply it in making their decisions.* If the Arizona Supreme Court has narrowed the definition of the ... aggravating circumstance, we presume that Arizona trial judges are applying the narrower definition.

497 U.S. at ——, 110 S.Ct. at 3057 (emphasis added) (citations omitted).

In Idaho a defendant in a capital case is sentenced by a district judge presumed to know the law. Therefore, Leavitt's re-

liance on *Godfrey* and *Maynard* is misplaced. We reaffirm our prior decisions and hold that the language of the aggravating circumstance in I.C. § 19–2515(g)(5) is not unconstitutionally vague. *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989); *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981).

## II.

■ Our decision in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), and as recently reaffirmed in *State v. Rhoades (Baldwin)*, 120 Idaho 795, 820 P.2d 665 (1991), and *State v. Card*, S.Ct. No. 18313, slip op. #130, 1991 WL 183162 (filed Sept. 20, 1991), explain the procedure whereby the sentencing judge must weigh the mitigating factors against each individual aggravating circumstance as required by I.C. § 19–2515. In *Charboneau* we concluded that a plain reading of I.C. § 19–2515 requires that all mitigating circumstances be weighed against each individual aggravating circumstance and held that a "trial court may sentence the defendant to death, only if the trial court finds that all the mitigating circumstances do not outweigh the gravity of each of the aggravating circumstances found and make imposition of death unjust." 116 Idaho at 153, 774 P.2d at 323; *see also State v. Rhoades (Baldwin)*, 120 Idaho at 810, 820 P.2d at 680.

In *Leavitt I*, this Court affirmed, as we do today, the district court's finding that the crime was "especially heinous, atrocious or cruel, manifesting exceptional depravity," as described in I.C. § 19–2515(g)(5). 116 Idaho at 294, 775 P.2d at 608. At the sentencing hearing on remand, the district court relied solely on I.C. § 19–2515(g)(5) as the only aggravating circumstance in reliance on our holding in *Leavitt I*. The facts in support of the finding that the crime was "especially heinous, atrocious or cruel, manifesting exceptional depravity" were summarized by the district court in the original sentencing as follows:

1. There were multiple stab wounds inflicted upon the body of the victim, sever-

al of which could have been the cause of death.

2. There were multiple slashes which appeared to be wounds inflicted upon a person under attack attempting to ward off the thrust of the knife.

3. As part of the death dealing attack or as a grisly aftermath, there was an anal cutting and removal of certain sexual organs from the nude body of the victim.

R., at 21.

At the sentencing hearing on remand, the district court heard additional evidence and considered the following as possible mitigating factors: 1) the State's case against Leavitt was circumstantial; 2) Leavitt suffered or suffers from an intermittent explosive disorder; 3) Leavitt comes from a law abiding family; 4) Leavitt is a father, a husband and a son; 5) Leavitt had been steadily employed; 6) Leavitt has no record of prior felony convictions; 7) there was evidence that Leavitt was a model prisoner; 8) Leavitt was using his time constructively while incarcerated by expressing himself through artistry and poetry. After examining each circumstance, the district court concluded:

> The Court has weighed all of the evidence in mitigation of defendant's culpability or blameworthiness in this case and weighed it against the aggravating circumstance which exhibited a heinous, atrocious and cruel murder manifesting exceptional depravity. The mitigating circumstances combined do not outweigh the aggravating circumstance to make the imposition of death unjust.

Leavitt asserts that the sentencing court improperly "whittled away" at the mitigating factors so as to render them insignificant and thus failed to properly weigh the mitigating factors and the sole aggravating circumstance. We disagree. As with any test that weighs and balances the merits of opposing considerations, it is paramount that the respective strengths and weaknesses be considered. Here, the record clearly demonstrates that the district court examined potential mitigating factors proffered by Leavitt and noted apparent weaknesses and inconsistencies. We find no error in this process and hold that the trial court properly applied the weighing test as required by our decisions in *State v. Charboneau, State v. Rhoades (Baldwin), State v. Card,* and I.C. § 19-2515(g)(5). Our review of the nineteen-page written sentencing memorandum filed in the instant case satisfies us that the trial court properly weighed all mitigating circumstances against the single I.C. § 19-2515(g)(5) aggravating circumstance.

### III.

In *Leavitt I,* we directed the district court on remand to consider alternative sentences available to the sentencing court. 116 Idaho at 294, 775 P.2d at 608. Our directive that the district court consider alternative sentences was limited to the unique circumstances of this case only and does not represent an additional element to be considered by the district courts as part of the analysis in death penalty cases. On remand, the sentencing memorandum clearly demonstrates that the district court considered alternative sentences including lifetime confinement, and the sentencing objectives of society such as rehabilitation, protection of society and deterrence. Our review of the record satisfies us that in resentencing Leavitt the district court properly considered sentencing alternatives and did not err nor abuse its discretion in imposing the death penalty.

### IV.

Idaho Code § 19-2827(c)(3) requires this Court to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." In *Leavitt I,* we previously made that determination and expressly held "the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases." 116 Idaho at 294, 775 P.2d at 608. Although we reaffirm our prior holdings in *Leavitt I,* a new death penalty sentence has been imposed and we must examine anew the issue of proportionality on this appeal.

In *State v. Rhoades (Baldwin)*, 120 Idaho 795, 820 P.2d 665 (1991), the Court recently reviewed the purpose of the proportionality analysis required by I.C. § 19-2827(c)(3), and our responsibility in that process.

Our perusal of the legislative history regarding the proportionality of sentences does not offer much guidance. The Statement of Purpose and the committee minutes for the bill that was eventually passed and codified as I.C. § 19-2827 expressed only a concern that the Idaho statute be updated to reflect recent ruling by the United States Supreme Court:

### STATEMENT OF PURPOSE

Only a few years ago, the United States Supreme Court made new "rules" concerning imposition of the death penalty for serious crimes. So that we conformed with this U.S. Supreme Court interpretation of the federal Constitution, the Idaho Legislature enacted in 1973 our present death penalty Sections 18-4003 and 18-4004, *Idaho Code.* Then, last year, the United States Supreme Court again changed the rules relating to capital punishment—after many states, like Idaho, had acted in response to its previous decision. The Court, in five cases, set forth new, more definitive rules concerning sentencing where the death penalty was sought to be imposed. The purpose of this bill is to codify into Idaho law these present requirements imposed on the states by these most recent United States Supreme Court decisions on capital punishment so that we will conform with this latest expression of the law.

There is no mention of proportionality, or any expression by the legislature that we are required to review the proportionality of sentences with a special standard or test. The requirement that the death sentence not be disproportionate to "the penalty imposed in similar cases," is one of several considerations this Court must examine in each death penalty case. The legislature did not see fit to establish a separate standard for proportionality review of sentences when I.C. § 19-2827 was enacted.

This Court looked at the proportionality of death sentences in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), and reviewed several cases in which the death penalty had been imposed or could have been imposed. The Court compared the facts of the crimes with the facts of the case they were reviewing to determine whether or not the sentence was disproportionate. This is the procedure that has been followed by this Court. We must do likewise.

*Rhoades (Baldwin)*, 120 Idaho at 812, 820 P.2d at 682.

In this case, Richard Leavitt killed Danette Elg by inflicting multiple knife wounds several of which could have been the cause of her death. In addition, there were multiple slashes on part of her body which the trial court found to be wounds inflicted while Elg was under attack attempting to ward off the thrust of Leavitt's knife. Finally, as part of the attack or following her death, Leavitt made an anal cutting and removed certain of her organs. In comparing this crime and this defendant to similar crimes by other similar defendants, the record in this case and the district court's findings and conclusions, we hold that the death sentence is not excessive or disproportionate.[3]

---

3. *State v. Card*, Idaho S.Ct. # 18313, slip op. # 130, 1991 WL 183162 (filed Sept. 20, 1991); *State v. Rhoades (Baldwin)*, 120 Idaho 795, 820 P.2d 665 (1991); *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991); *State v. Paz*, 118 Idaho 542, 798 P.2d 1 (1990); *State v. Lankford*, 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* — U.S. —, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989); *McKinney v. State*, 115 Idaho 1125, 772 P.2d 1219 (1989); *State v. Fetterly*, 115 Idaho 231, 766 P.2d 701 (1988); *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1985); *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *State v. Beam*, 109 Idaho

## V.

Leavitt asserts the weighing of the mitigating and aggravating circumstances was influenced by the passion and prejudice of the sentencing court. In support of this argument, Leavitt asserts the sentencing court improperly referred to photographs of the crime scene more than once, and that this repeated reference shows the sentencing judge was unable to properly balance the mitigating and aggravating circumstances. Leavitt does not argue that it was improper for the sentencing court to view the crime scene photographs. Rather, Leavitt claims the written sentencing decision made several references to the photographs and that this necessarily indicates impermissible passion and prejudice in the sentencing process. In effect, Leavitt claims the sentencing court weighed the mitigating factors with the photographs rather than the statutory aggravating circumstance. We disagree.

We have carefully reviewed the sentencing court's memorandum decision and are satisfied that the sentence imposed was not the product of passion and prejudice, nor was it arbitrarily imposed. The sentencing judge was the same judge who had presided over the trial and original sentencing hearing. He was familiar with the facts of the case which led him, and this Court in *Leavitt I*, to conclude that the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity. I.C. § 19–2515(g)(5). Although it is possible in some circumstances that graphic photographs could lead to prejudice and passion in the sentencing process, we find no such error in the instant case. The photographs were admitted into evidence at trial and their use at trial was upheld by this Court in *Leavitt I*, 116 Idaho at 290, 775 P.2d at 604. To make reference at sentencing to the evidence shown in the crime scene photographs and photographs of the victim's body was not error. We have reviewed the record and hold the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.

## VI.

We have independently reviewed the record and conclude an adequate basis for the imposition of the death penalty exists. The sentencing court considered alternative sentences and properly weighed the mitigating factors against the sole aggravating circumstance. The imposition of the death sentence was not influenced by passion, prejudice or other arbitrary consideration, and the sentence is not disproportionate or excessive when compared to similar cases.

The imposition of the death sentence is affirmed. Upon issuance of the remittitur, the district court shall set a new execution date.

BAKES, C.J., and McDEVITT, J., concur.

JOHNSON, J., concurs in parts I, II, III, V and VI, and specially concurs in part IV.

JOHNSON, Justice, concurring and concurring specially.

I concur in all of the Court's opinion. I write only to explain the basis for my concurrence in part IV, which concerns the proportionality of the death penalty.

For reference I refer to the appendix to my opinion in *State v. Card*, No. 130 (Idaho filed Sept. 20, 1991), in which I summarized the cases I compared there pursuant to I.C. § 19–2827(c)(3) and the decisions of this

616, 710 P.2d 526 (1985); *State v. Bainbridge*, 108 Idaho 273, 698 P.2d 335 (1985); *State v. Aragon*, 107 Idaho 358, 690 P.2d 293 (1984); *State v. McKinney*, 107 Idaho 180, 687 P.2d 570 (1984); *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Sivak*, 105 Idaho 900, 674 P.2d 396 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984); *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983); *State v. Major*, 105 Idaho 4, 665 P.2d 703 (1983); *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336, *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982); *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981); *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979).

Court, considering both the crime and the defendant.

The cases I find most similar to this one so far as the crime is concerned are:

1.  *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986) (death penalty overturned by this Court as disproportionate).
2.  *State v. Beam*, 109 Idaho 616, 710 P.2d 526 (1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986) and 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989) (death penalty imposed).
3.  *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984) (death penalty imposed).
4.  *State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984) (death penalty imposed).
5.  *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979) (life sentence imposed).

On the basis of this comparison of these cases in which the crime was similar to the murder in this case, I find the death sentence imposed on Leavitt was not excessive or disproportionate.

The cases I find most similar to this one so far as the defendant is concerned are:

1.  *State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1985) (death penalty imposed).
2.  *State v. Aragon*, 107 Idaho 358, 690 P.2d 293 (1984) (death penalty imposed).

On the basis of this comparison of these cases in which the characteristics of the defendant were similar, I find the death sentence imposed on Leavitt was not excessive or disproportionate.

BISTLINE, Justice, dissenting.

A jury convicted Leavitt of first degree murder in September 1985. In December of that year, following a sentencing hearing, the district court imposed the sentence of death. This Court affirmed the conviction. The sentence was vacated on the grounds that the district court failed to adequately weigh the mitigating factors and failed to consider long term confinement as a viable alternative to the death penalty. *State v. Leavitt*, 116 Idaho 285, 775 P.2d 599 (1989). On remand, the district court considered additional testimony presented by the defendant, his son, and prison guards familiar with the defendant's behavior in prison during a hearing held in December 1989. Thereafter, the district court issued its memorandum decision in January 1990.

After reconsidering the mitigating circumstances against the single aggravating circumstance of a murder especially heinous, atrocious or cruel, manifesting exceptional depravity, the sentence of death was again imposed. Also considered, but rejected, was the alternative of incarceration. This Court properly would at this stage vacate the sentence and once again remand for resentencing of the defendant for the reasons detailed as follows:

I.  THE PHRASE "EXCEPTIONAL DEPRAVITY" CONTAINED IN I.C. § 19–2515(g)(5) VIOLATES THE EIGHTH AMENDMENT.

Leavitt argues that the phrase "exceptional depravity," part of the aggravating circumstance I.C. § 19–2515(g)(5), is unconstitutional because "exceptional depravity" does not limit the sentencing court's discretion in any meaningful manner. Leavitt asserts that the phrase "exceptional depravity" describes a mental state, particularly susceptible to subjective interpretation, thus making the decision to impose the death sentence in this case arbitrary. Leavitt argues that the sentencing court was not adequately guided by the aggravating factor, and in support Leavitt points to this sentence from the district court's sentencing decision: "The brand of atrociousness burns deeper and the depravity becomes exceptional."

As was recently stated by the Ninth Circuit Court of Appeals on reviewing an Idaho death sentence:

Recently, the Supreme Court announced the process by which we review such a

challenge. In *Walton v. Arizona*, 110 S.Ct. 3047, 3057, the court held:

> When a federal court is asked to review a state court's application of an individual statutory aggravating or mitigating circumstance in a particular case, it must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer. If so, then the federal court must attempt to determine whether the state courts have further defined the vague terms and if they have done so, whether those definitions are constitutionally sufficient, *i.e.*, whether they provide *some* guidance to the sentencer.

*Creech v. Arave*, 947 F.2d 873, 882 (9th Cir.1991). In the course of the *Creech* opinion the Ninth Circuit court held that aggravating circumstance I.C. § 19–2515(g)(6) was unconstitutionally vague, even when the narrowing construction placed upon that aggravating circumstance by the Idaho Supreme Court was taken into consideration. There appears to be no reason not to follow the *Walton* example in addressing the constitutionality of (g)(5), so this Court should first determine whether the bare language of the aggravating circumstance is constitutionally firm. If it is not, we should then apply whatever limiting construction to the phrase "exceptional depravity" has been is provided by case law precedent.

As the *Creech* opinion points out,

> The Supreme Court has found that aggravating circumstances must 'channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance and that make rationally reviewable the process for imposing a sentence of death.' *Godfrey v. Georgia*, 446 U.S. 420, 428 [100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398] (1980) (quotations and footnotes omitted). '[T]he channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement *for sufficiently minimizing the risk of wholly arbitrary and capricious action.*' *Maynard v. Cartwright*,

486 U.S. 356, 362, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988).

*Creech*, 947 F.2d at 883 (emphasis added).

The phrase "exceptional depravity" restricts the class of murders considered which fall within aggravating factor (g)(5), simply because not all especially heinous, atrocious or cruel murders satisfy the requirement of (g)(5): "The murder was especially heinous, atrocious or cruel, manifesting exceptional depravity." I.C. § 19–2515(g)(5). Only those especially heinous, atrocious or cruel murders that manifest "exceptional depravity" will fall under this aggravating factor. In attempting to discern which especially heinous, atrocious or cruel murders manifest exceptional depravity, and which do not, this Court, the sentencing court or any other court is provided little or no guidance from the bare language of (g)(5).

This Court in *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981), recognized the inadequacy of (g)(5), and adopted a limiting construction.

> What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

*Osborn*, 102 Idaho at 418, 631 P.2d at 200 quoting *State v. Dixon*, 283 So.2d 1, 9 (Fla.1973), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).

*Osborn* further limited (g)(5) using a standard taken from the Nebraska court:

> In interpreting this portion of the statute, the key word is "exceptional." It might be argued that every murder involves depravity. The use of the word 'exceptional,' however, confines it only to those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence.

*Osborn,* 102 Idaho at 418, 631 P.2d at 200, quoting *State v. Simants,* 197 Neb. 549, 250 N.W.2d 881, 891 (1977), *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158, *reh. denied,* 434 U.S. 961, 98 S.Ct. 496, 54 L.Ed.2d 322 (1977), *overruled on other grounds, State v. Reeves,* 234 Neb. 711, 453 N.W.2d 359, 377 (1990).

Thus, a sentencing court, constrained to follow this interpretation of I.C. § 19–2515(g)(5), is instructed that a murder is exceptionally depraved whenever it is found to be a "conscienceless or pitiless" crime which is "unnecessarily torturous to the victim" and also involves conduct which "obviously offend all standards of morality and intelligence." However, it yet remains impossible to comprehend what unjustified homicides do not offend all standards of morality and intelligence. See *State v. Bitt,* 118 Idaho 584, 588, 798 P.2d 43, 47 (1990) ("if the statute or ordinance is broad enough to catch everyone, it has no core of circumstances to which it applies and is therefore unconstitutionally vague"). In the words of the federal court *Creech* opinion, "we fail to see how the aggravating circumstance ... permits 'the sentencer to make a principled distinction between those who deserve the death penalty and those who do not.' " *Creech,* 947 F.2d at 883 (citation omitted).

Because the test adopted from *Simants* is unconstitutionally vague and does not provide any guidance to the district courts, aggravating circumstance (g)(5) in its present form can no longer be relied upon as a sufficient reason to inflict the death penalty.

Assuming *arguendo* that the remaining portion of the *Osborn* limiting instruction (the portion adopted from *Dixon*) sufficiently guides the court's in its decision, *but see State v. Charboneau,* 116 Idaho 129, 171–172, 774 P.2d 299, 341–42 (1989) (Bistline, J. dissenting), *cert. denied,* 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989) *reh. denied* 493 U.S. 923, 110 S.Ct.

290, 107 L.Ed.2d 270 (1989), its application to the facts of this case demonstrates that the State did not prove beyond a reasonable doubt that the offense was conscienceless, pitiless and unnecessarily torturous to the victim.[4] The sentencing court pointed to three facts to support the finding of the aggravating circumstance. First, "[t]here were multiple stab wounds ... several of which could have been the cause of death."

Taken in isolation, this finding does not show that the killing was unnecessarily torturous to the victim. Evidence of multiple stab wounds does not in and of itself set an offense apart from other capital offenses, unless it is shown that the wounds were unnecessary to accomplish the crime. That is, for example, the wounds were inflicted for the sake of inflicting torture itself, and not in the attempt to cause the victim to die. No such evidence of the sort was presented here. In fact, the trial court found that several of the many wounds inflicted could have been the cause of death. If the last of the stab wounds was the one that caused the death, or, if cumulatively the other stab wounds were inflicted with the intent to cause death, it cannot be said the multiple stab wounds were "unnecessarily torturous."

That same analysis applies to the second fact found by the court that "[t]here were multiple slashes" which appeared to be defensive wounds. As the victim was struggling, the existence of multiple wounds, some of which defensive in nature, does not indicate that the crime was committed in an unnecessarily torturous manner. It does not prove that the force used was more than necessary to kill the victim. Plainly, more force will be required to accomplish the end result where the intended victim is struggling, but that in and of itself does not prove unnecessary force.

Examples of acts "unnecessarily torturous" might be where the victim is subject-

---

4. Although appellant did not challenge the sufficiency of the evidence as to the aggravating circumstance, the Court is directed by statute to determine "[w]hether the evidence supports the judge's finding of a statutory aggravating circumstance...." I.C. § 19–2827(c)(2).

ed to gratuitous physical, sexual, or psychological abuse before death. The fact that it has not been proved that more force was used than was needed to effectuate the criminal intent distinguishes this case from *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), where the (g)(5) aggravating circumstance was used in a multiple stab wound murder. In that case, the multiple stab wounds were unnecessarily torturous because the victim's hands and feet were bound by duct tape and he was in no position to defend himself. There was no reason to stab the victim several times in that case.

Compared to other (g)(5) cases where the death penalty has been upheld, this case is distinguishable. In *State v. Fain,* 116 Idaho 82, 774 P.2d 252 (1989), *cert. denied,* 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1990), the defendant kidnapped and sexually abused a nine year old girl. Here, the victim was an adult and was not sexually abused or kidnapped.

In *State v. Mark Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* — U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990), the defendant, fully armed with lethal weapons, bludgeoned the victims' skulls in such a brutal manner that the skulls had to be reconstructed by an anthropologist before the cause of death could be determined. The amount of violence here does not begin to approach the gratuitous infliction of torture inflicted in the Mark Lankford case.

In *State v. Stuart,* 110 Idaho 163, 715 P.2d 833 (1985), after several instances of abusing a three year old boy, the son of his live-in girlfriend, Stuart finally beat him to death. There was no evidence here that the murder was unnecessarily torturous because it was the end result of a pattern of physical abuse.

In *State v. Beam,* 109 Idaho 616, 710 P.2d 526 (1985) *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986) *reh.*

*denied* 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989), the defendant and a codefendant killed a thirteen year old girl by drowning her, but not until he hand cuffed and raped her. The victim had several, non-fatal, knife wounds including one where her panties had been cut off. Appellant's offense is distinguishable because there was no sexual assault, the victim was not a child and the knife wounds were not inflicted for the purpose of inflicting gratuitous pain as was the case in *Beam.*

In *State v. Aragon,* 107 Idaho 358, 690 P.2d 293 (1984), the defendant beat to death an eight month old baby, the daughter of his female roommate. As in *Stuart,* the death was the end result of a pattern of abuse towards the child.

Here, the State failed to carry its burden of proving the crime was "unnecessarily torturous." Absence of any proof that the injuries inflicted to cause the death were more than was necessary to kill the victim, that is, inflicted gratuitously, multiple stab wounds, in and of themselves, do not constitute the (g)(5) aggravating factor.

Finally, there is the finding that appellant "[a]s part of the death dealing attack, or as a grisly aftermath" sexually mutilated the victim. However, when one places aside the revulsion felt towards the act itself, the realization that the court did not find this act was part of the murder is inevitable. That is, the state did not prove that the sexual mutilation occurred as part of the murder. If it was, in fact, "a grisly aftermath," it cannot be a aggravating circumstance under (g)(5) because "[t]he murder" was not "especially heinous, atrocious or cruel," rather it was the grisly aftermath. If the legislature had intended that depraved acts occurring after the murder be considered an aggravating circumstance under (g)(5), it would have used the "murder or circumstances surrounding its commission" language found in (g)(6). It did not and we can only surmise the legislature did not intend this type of post-event depravity to be an aggravating circumstance.

In sum, that portion of the *Osborn* limiting construction taken from *State v.*

*Simants* is unconstitutionally vague. And even if the remaining portion of the limiting instruction sufficiently guided the discretion of the district court, the aggravating factor so limited has not been proved beyond a reasonable doubt.

## II. THE DISTRICT COURT WAS INFLUENCED BY PASSION AND PREJUDICE.

Leavitt's argument that the resentencing was influenced by passion, prejudice and arbitrary factors is based on the fact that the sentencing opinion refers more than one time to the graphic photographs of the victim's body in an advanced state of decomposition. Leavitt asserts that these photos are not the aggravating circumstance that must be weighed against all mitigating circumstances, and that the sentencing judge improperly allowed his reaction to the photos to guide his discretion instead of directing his consideration of the aggravating circumstance as weighed against the mitigating factors.

In response, the State argues that merely conclusory allegations of bias are not sufficient to demonstrate that an appellant is entitled to relief on the ground of improper prejudice on the part of the judge. However, a careful review of the district court's decision is convincing that more than mere conclusory allegations are present here.

The sentencing court made the following observations concerning the pictures of the deceased in the course of its decision to again impose the death penalty:

It became the unpleasant duty of the Court to view the graphic photographs of Danette Elg, the deceased victim in this case.

. . . .

Considering the heinous nature of the crime, it is the Court's duty to collectively weigh the mitigating circumstances against the gruesome picture portrayed above to determine whether the mitigating elements make the death sentence unjust.

. . . .

It is difficult to conceive of any circumstances that would outweigh the picture presented to the Court of the crime scene.

. . . .

To attempt to view this scene leaves one with a disgusting sick feeling.

. . . .

Combining all of these weakened redeeming qualities with the defendant's artistic and poetic expression certainly creates a smoke screen around the murder scene, but the heinous and atrocious details can still be seen with some clarity through the smoky vapors.

Findings, Conclusions and Order, pp. 21, 22, 31, 32.

It was not error for the court to have viewed the photographs, because the court may properly review all the admitted evidence in determining an appropriate sentence. However, the photographs obviously elicited a strong emotional response from the district court and conceivably may have resulted in an arbitrarily imposed sentence. Ordinarily, this Court is in no position to question the emotional involvement of a sentencing court. But ordinarily we do not see a portrayal of the emotional response such as that which the judge here endured and which is difficult to disregard. This Court is not at liberty to ignore the district court's inability in this instance to divorce subjective emotional responses from a rational and objective consideration of the evidence in mitigation and aggravation.

The sentence of death should be vacated and the cause remanded for a resentencing.