873 P.2d 784

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Timothy Alan DUNLAP, Defendant–Appellant.**

No. 19928.

Supreme Court of Idaho,
Twin Falls, March 1993 Term.

July 27, 1993.

Rehearing Denied Sept. 28, 1993.

Whittier, McDougall, Souza, Murray & Clark, Chartered, Pocatello, for defendant-appellant. Monte R. Whittier, argued.

Larry EchoHawk, Atty. Gen., and Lynn E. Thomas (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

McDEVITT, Chief Justice.

## BACKGROUND

On October 16, 1991, Dunlap entered and robbed the Security State Bank in Soda Springs, Idaho. In the course of the robbery, Dunlap shot and killed Tonya Crane ("Crane"), a bank teller, with a close-range shotgun blast to her chest. Dunlap fled the scene, but subsequently surrendered to police officers. A criminal information was filed against Dunlap on November 15, 1991, charging him with first degree murder, robbery, use of a firearm in the commission of a murder, and use of a firearm in the commission of a robbery.

On December 30, 1991, the State and Dunlap entered into a plea bargain agreement which was accepted by the district court. In the agreement, the State dropped the robbery and use of a firearm in the commission of a robbery charges, and Dunlap pled guilty to first degree murder and use of a firearm in the commission of a murder. Although Dunlap pled guilty to first degree murder, the district court specified that Dunlap's plea did not admit that he had a specific intent to kill at the time the bank robbery took place. The plea agreement allowed the State to seek the death penalty and it was made clear in the agreement that the State would seek the death penalty.

The plea agreement also recognized that Dunlap had been indicted in the October 6, 1991, killing of Belinda Bolanos ("Bolanos") in Ohio. Dunlap agreed that the Ohio indictment, information, witness statements, and evidence could be submitted to the district court through the presentence report and could be considered by the district court as evidence in aggravation. Dunlap also agreed not to object to the Ohio information, witness statements, or evidence except on the basis that he had not been convicted of the Ohio crime at the time of the agreement. In return, the State agreed not to call as a witness at sentencing any Ohio state police officer, forensic pathologist, or other Ohio law enforcement official. Nor would the State introduce any pictures of Bolanos taken by Ohio law enforcement authorities after her death.

Prior to sentencing, Dunlap filed a motion in limine to exclude at sentencing any evidence of the Bolanos killing. Dunlap argued that because he had not been convicted of any crime in Ohio, such evidence was irrelevant, prejudicial, and would violate his right to due process by determining his guilt in the Bolanos killing without the benefit of a trial. The district court disagreed and denied Dunlap's motion.

The sentencing hearing was held on March 31, 1992, and on April 19, 1992, the district court filed its "Findings of the Court in Considering Death Penalty under Idaho Code § 19–2515 and Imposition of Sentence," sentencing Dunlap to death. Pursuant to I.C. § 19–2515, the district court found two aggravating circumstances to exist beyond a reasonable doubt, which considered individually, were not outweighed by all of the mitigating evidence. The aggravating circumstances found by the district court include: (1) that the murder was a felony murder committed with the specific intent to cause the death of a human being, I.C. § 19–2515(g)(7); and (2) that Dunlap, by prior conduct, or conduct in the commission of the murder at hand, exhibited a propensity to commit murder which will probably constitute a continuing threat to society, I.C. § 19–2515(g)(8).[1]

Dunlap appeals from the trial court's sentence, raising the following issues:

1. Whether the trial court erred in determining that the aggravating circumstance listed at I.C. § 19–2515(g)(7) existed beyond a reasonable doubt.

2. Whether the trial court erred in determining that the aggravating circumstance listed at I.C. § 19–2515(g)(8) existed beyond a reasonable doubt.

3. Whether I.C. § 19–2515(g)(8) is unconstitutionally vague.

4. Whether I.C. § 19–2515(c) is unconstitutional.

5. Whether the trial court erred by failing to give more weight to certain mitigating factors upon sentencing.

In addition to these issues we also independently review the sentence of death as required by I.C. § 19–2827.

## I.

### I.C. § 19–2515(g)(7)

Idaho Code § 19–2515(g)(7) states that a statutory aggravating circumstance will exist when "[t]he murder was one defined as murder of the first degree by section 18–4003, Idaho Code, subsections (b), (c), (d), (e) or (f), and it was accompanied with the specific intent to cause the death of a human being." In this case, the district court found the (g)(7) aggravating circumstance to exist beyond a reasonable doubt based on I.C. § 18–4003(d),[2] stating:

The facts of the killing demonstrated that the defendant entered the bank with a preconceived plan, demanded the money, received it, and shot the victim—all in approximately thirty seconds. Further the victim herself made no sudden moves and activated no alarms. The defendant admitted that he intended to shoot the victim, that he had sawed off the shotgun with the intent to use it in criminal activity, and that he knew the effect of sawing off the shotgun and the effect of using low load shotgun shells. He told jail inmates that with this low load he knew the shot would kill the victim, regardless, but she would

1. The district court also found beyond a reasonable doubt that by the murder, or circumstances surrounding its commission, Dunlap exhibited an utter disregard for human life. I.C. § 19–2515(g)(6). However, due to the Ninth Circuit's ruling that this section was unconstitutional, the district court did not rely on or use this aggravating circumstance for imposing the death penalty. *See Creech v. Arave,* 947 F.2d 873 (9th Cir. 1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992). The United States Supreme Court has since upheld the constitutionality of I.C. § 19–2515(g)(6) in *Arave v.*

*Creech,* —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188. However, because the district court did not rely on I.C. § 19–2515(g)(6) for imposing the death penalty, there are no issues involving this section on this appeal.

2. **18–4003. Degrees of murder.—**

(d) Any murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years of age, arson, rape, robbery, burglary, kidnapping or mayhem is murder of the first degree.

die more slowly. He fired his weapon eighteen inches to two feet from the victim's abdomen.

Additionally, testing performed for the State indicates that the trigger pull of this weapon was at least seven pounds, and, therefore, would not, under circumstances described, have been accidentally discharged. Further, the defendant has indicated that he committed the killing because Tonya Crane "had to die" and "to teach her a lesson." He has also indicated that he shot her to create a diversion. The defendant further related to inmates of the Bingham County Jail that he intended to kill Tonya Crane when he robbed the bank. Finally, Dr. Estess testified that it was his opinion that Timothy Dunlap entered the bank with the intent to kill rather than to rob. It was the Doctor's opinion that the killing provided the defendant with emotional gratification and that he picked this particular victim because she was vulnerable and easy to kill.

. . . . .

The law judges intent by objective standards. Persons of reasonable experience and intelligence would expect death as the natural consequence of a shooting under these circumstances. To purchase and modify a shotgun, to enter a bank with an abundance of ammunition, to then discharge the gun directly at a person from a range of less than two feet, all denotes specific intent. Dunlap admits intending to shoot and intending to wound. To claim under these circumstances a lack of intent to kill is ludicrous.

Therefore, the overwhelming evidence of this case demonstrates by any objective standard that the State has proved beyond a reasonable doubt the defendant had the specific intent to cause death to a human being when he shot and killed Tonya Crane.

Dunlap raises two arguments regarding the district court's findings. First, Dunlap argues that the district court used the wrong standard in finding that Dunlap had the specific intent to kill, and second, that the evidence does not support a finding beyond a reasonable doubt that Dunlap had the specif-ic intent to kill when he shot Tonya Crane. We address each of Dunlap's arguments in turn.

Regarding the standard by which the district court is to determine specific intent to kill, Dunlap argues that the district court failed to differentiate between the premeditation that normally accompanies the act of first degree murder with the element of specific intent to kill, which is required to prove the aggravating circumstance of I.C. § 19–2515(g)(7). Because murder is defined as "the unlawful killing of a human being with malice aforethought," I.C. § 18–4001, Dunlap maintains that the specific intent to kill language contained in I.C. § 19–2515(g)(7) requires a finding of "heightened premeditation" by the trial court.

In support of his argument, Dunlap cites various Florida cases. *See Porter v. State,* 564 So.2d 1060 (Fla.1990); *Pardo v. State,* 563 So.2d 77 (Fla.1990); *Hamblen v. State,* 527 So.2d 800 (Fla.1988). However, the Florida cases are not interpreting an aggravating condition similar to that found in I.C. § 19–2515(g)(7). Rather, the aggravating circumstance in those cases is whether the murder was committed in a cold, calculated, and premeditated manner without any moral or legal justification. *See* Fla.Stat. § 921.141(5)(i). Furthermore, Florida imposes the "heightened premeditation" requirement because premeditation is already an element of capital murder in Florida. The Florida Supreme Court stated in *Porter:*

> Since premeditation already is an element of capital murder in Florida, section 921.-141(5)(i) must have a different meaning; otherwise, it would apply to every premeditated murder. Therefore, section 921.-141(5)(i) must apply to murders more cold-blooded, more ruthless, and more plotting than the ordinary reprehensible crime of premeditated first-degree murder. (Footnotes omitted.)

564 So.2d at 1064. Such is not the case in Idaho. Under I.C. § 18–4003(d), "malice aforethought" is satisfied by the fact that the killing was committed in the perpetration of the felony. *State v. Lankford,* 116 Idaho 860,

781 P.2d 197 (1989); *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1983).

Nevertheless, Dunlap argues that this analysis does not fit for the other first degree murders listed in I.C. § 19–2515(g)(7), such as the murder of a peace officer under I.C. § 18–4003(b), or a murder committed by a person under a sentence for murder under I.C. § 18–4003(c). Dunlap argues that "malice aforethought" is not satisfied by the circumstances of these killings as it is with felony murder. Therefore, the requirement in I.C. § 19–2515(g)(7) that the State prove a specific intent to kill necessarily infers a heightened degree of premeditation. However, this argument ignores the definition of malice.

Under I.C. § 18–4002, malice is express when there is manifested a deliberate intention to unlawfully take away a life, or implied, when the circumstances attending the killing show an abandoned and malignant heart. Under this interpretation, an abandoned and malignant heart killing is murder although there is no premeditated intent to kill. If the abandoned and malignant heart murder also involves the enumerated circumstances in I.C. § 18–4003(b), (c), (d), (e) or (f), such as the person murdered is a peace officer, § 18–4003(b), or the person who committed the murder was under a sentence for murder, § 18–4003(c), then that murder is classified as first degree murder under I.C. § 18–4003. *See State v. Pratt (James)*, 125 Idaho 546, 873 P.2d 800 (1993); *State v. Lankford*, 116 Idaho 860, 781 P.2d 197 (1989). *See also Arave v. Creech*, —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188. However, unless the State can show the additional element of specific intent to kill, *i.e.* a premeditated intent to kill, the circumstances of an abandoned and malignant heart murder will not satisfy I.C. § 19–2515(g)(7) and allow a judge to impose the death penalty. The specific intent to kill requirement of I.C. § 19–2515(g)(7) merely requires that the State prove that the first degree murder occurred with express malice. Nothing in the statutory scheme or the language of the statute indicates that a higher standard was

intended by the legislature. Nor do any of our prior cases in which I.C. § 19–2515(g)(7) was applied suggest that the malice aforethought requirement for murder is duplicated by the (g)(7) factor. Accordingly, the district court applied the correct standard in finding specific intent to kill in this case.

■ We now turn to the issue of whether there is sufficient evidence to support a finding that Dunlap had the specific intent to kill Crane beyond a reasonable doubt. The record shows that Dunlap carried a sawed-off shotgun into the bank, pointed it at Crane at a range of less than two feet and pulled the trigger, killing her. We have held that express malice can be found when a defendant uses a deadly weapon against a person in a deadly and dangerous manner. *State v. Warden*, 100 Idaho 21, 592 P.2d 836 (1979); *State v. Buchanan*, 73 Idaho 365, 252 P.2d 524 (1953). Additionally, Dr. Estess testified that Dunlap entered the bank with the intent to kill, not to rob. Dunlap himself told others that he intended to kill Crane. The evidence in this case supports, beyond a reasonable doubt, the district court's finding that Dunlap committed the robbery with the specific intent to kill as required by I.C. § 19–2515(g)(7).

## II.

### I.C. § 19–2515(g)(8)

■ At the time of sentencing, Dunlap had been indicted in Ohio for the killing of Bolanos, and under the plea agreement, the State was permitted to present the indictment, information, witness statements, and other evidence of the Bolanos killing for the purpose of proving that Dunlap had the propensity to commit murder under I.C. § 19–2515(g)(8). Pursuant to the plea agreement, Dunlap could only object to such evidence on the basis that he had not been convicted of the crime in the State of Ohio. However, the plea agreement also states that if the trial court admits the Ohio evidence at sentencing over Dunlap's objection, then Dunlap admits that he feloniously killed Bolanos.[3]

---

**3.** The plea agreement states: "If the [district] Court determines that said evidence, informa-

tion, witness statements, or statements of Defendant are admissible in aggravation of sentence,

The district court ruled that the evidence of the Ohio killing was admissible because it was both reliable and was otherwise admissible under the Idaho Rules of Evidence and Idaho case law. Dunlap argues on appeal that the district court erred in considering the Ohio evidence, claiming that because he had not been convicted of the crime at that time the use of such evidence was irrelevant. However, in *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), we defined "propensity" as "a proclivity, a susceptibility, and even an affinity toward·committing the act of murder." Certainly under this definition, Dunlap's involvement in the Bolanos killing is relevant to Dunlap's character and whether he has a propensity to commit murder.

Nevertheless, Dunlap argues that because he.has not been convicted of any crime regarding the Bolanos killing, the use of such evidence is prejudicial and should not have been considered by the district court despite its relevancy. We have stated that a "sentencing judge is entitled to consider a wide range of relevant evidence when he evaluates what the appropriate sentence for each particular defendant he sentences must be." *Sivak v. State*, 112 Idaho 197, 214, 731 P.2d 192, 209 (1986). In past cases, relevant evidence has included prior criminal conduct despite the fact that the particular defendant had not been convicted of a crime. *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992) (letters detailing other violent crimes that defendant had committed related to defendant's dangerousness to society and to his character and were therefore not unfairly prejudicial); *State v. Kohoutek*, 101 Idaho 698, 699, 619 P.2d 1151, 1152 (1980) ("It is proper for a trial court in sentencing a defendant to consider evidence of his participation in criminal conduct ... for which he has not been convicted or for which an information has not been secured."); *State v. Ott*, 102 Idaho 169, 170, 627 P.2d 798, 799 (1981). ("In arriving at its sentencing decision the court was within its authority in considering

prior charges against Ott which had been dismissed and the pending charges against him....")

The most applicable case on this issue is *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983). In *Creech*, this Court found the defendant's propensity to commit murder and his continuing threat to society was evidenced by prior conduct which consisted of murder charges which were pending or for which the defendant had not been charged. The Court stated:

> As applied to this particular defendant, the finding of propensity was clearly tailored and correct. The defendant here committed murder at least four times prior to the instant offense, twice in Idaho and also in Oregon and in California. *There presently exist other pending charges of murder in the first degree against him.* The testimony of an eye witness to one of Creech's previous murders, coupled with psychiatric evidence, tends to prove that the appellant is violent and vengeful and that he experiences no remorse for his actions. *Letters written by Creech to law enforcement personnel detailed numerous alleged murders beyond those for which he has already been convicted and intimate his intentions to kill in the future. Creech's own statements claim responsibility for approximately forty murders.*

105 Idaho at 371, 670 P.2d at 472 (emphasis added). Given this prior case law, we conclude that evidence of prior unconvicted crimes is relevant and is not unduly prejudicial when determining whether a defendant has the propensity to commit murder in the future.

In light of the relevance of Dunlap's involvement with the Bolanos killing and our prior case law which allows such evidence to be considered, the district court properly considered the Ohio evidence in determining whether Dunlap has the propensity to kill under I.C. § 19–2515(g)(8). Consequently, Dunlap "does hereby agree and admit that

regardless of Defendant's objection, Defendant does hereby agree and admit that he did feloniously kill Belinda Bolanos, a human being, on October 6, 1991, in Hamilton County, Ohio, by shooting her in the throat and in the head with a cross bow. The admission of Defendant as to the

killing of Belinda Bolanos, as contained in this paragraph, is admissible solely for purposes of this Plea Agreement and in sentencing on Count I of the Criminal Information filed in this case charging the Defendant with Murder in the First Degree."

he did feloniously kill Belinda Bolanos ... by shooting her in the throat and in the head with a cross-bow." Pursuant to the plea agreement, this confession is admissible only for purposes of the plea agreement and the sentencing of Dunlap for the charge of first degree murder.[4]

In addition to evidence of the Bolanos killing, there was testimony by Dr. Estess that Dunlap has an explosive personality, motivated by rage and anger, and that the objects of his anger are generally women. Dr. Estess gave his opinion that Dunlap has the propensity to commit murder in the future. This opinion was based on personal interviews with Dunlap, interviews of Dunlap by others, the evidence from the Crane and Bolanos killings and past medical and psychiatric evaluations of Dunlap. Accordingly, we concluded that the evidence in this case supports, beyond a reasonable doubt, the district court's finding that Dunlap has the propensity to commit murder which will probably constitute a threat to society.

## III.

### CONSTITUTIONALITY OF I.C. § 19–2515(g)(8)

■ Dunlap next argues that I.C. § 19–2515(g)(8) is unconstitutionally vague because it requires a court to find that a defendant "has exhibited a propensity to commit murder which will *probably* constitute a continuing threat to society." (Emphasis added.) Dunlap maintains that the use of the word "probably" implies a "preponderance of the evidence" standard rather than a "beyond a reasonable doubt" standard, which is the standard by which an aggravating circumstance must be found. Because the language appears contradictory, Dunlap asserts that the statute is unconstitutionally vague.

Our analysis of a vagueness claim has been stated as follows:

Under the eighth amendment a claim based on vagueness is analyzed by determining whether the challenged aggravating circumstance adequately informs the sentencer what it must find in order to impose the death penalty, or whether it leaves the sentencer with unchanneled discretion to make an arbitrary and capricious decision.

*State v. Pizzuto,* 119 Idaho 742, 771, 810 P.2d 680, 709 (1991). *See also Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). This Court has upheld the constitutionality of I.C. § 19–2515(g)(8) in *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991); *State v. Sivak,* 105 Idaho 900, 674 P.2d 396 (1983); and *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983). In *Sivak,* the defendant made the same argument as Dunlap now advances, that the word "probably" allows a trial judge to find an aggravating circumstance based on less than a reasonable doubt. However we rejected such an interpretation of I.C. § 19–2515(g)(8), stating:

Reading (f)(8) [now (g)(8) ] in its entirety, we fail to see how it can be reasonably argued that the statute could be interpreted to require only a finding based on the preponderance of the evidence, rather than beyond a reasonable doubt, as it expressly states.

. . . . .

The interpretation that appellant urges is contrary to the clear wording of the statute. I.C. § 19–2515(f)(8) merely requires a finding, beyond a reasonable doubt, of the existence within the defendant of a propensity to commit murder likely to cause a threat to society. Thus read, (f)(8) [now (g)(8) ] is not unconstitutionally vague.

105 Idaho at 904–05, 674 P.2d at 400–01. For these same reasons, we also reject Dunlap's argument and uphold the constitutionality of I.C. § 19–2515(g)(8).

---

4. The Bolanos admission, although admissible for purposes of determining Dunlap's propensity to kill under I.C. § 19–2515(g)(8), is not admissible against Dunlap for purposes of any criminal proceeding in Ohio. The plea agreement states: "This admission shall not be used against the Defendant in the criminal proceeding pending in the State of Ohio as described in paragraph 11 of this Plea Agreement. A copy of the agreement to this effect executed by the Prosecuting Attorney for Hamilton County, Ohio, is attached hereto."

## IV.

### CONSTITUTIONALITY OF
### I.C. § 19–2515(c)

█ I.C. § 19–2515(c) states:

Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstances found and make imposition of death unjust.

Dunlap asserts that the statute fails to address the standard by which the sentencing court must weigh the mitigating circumstances against each aggravating circumstance. It is Dunlap's contention that the sentencing court must be able to say beyond a reasonable doubt that the mitigating circumstances do not outweigh the aggravating circumstances, and because I.C. § 19–2515(c) does not require such a finding, it is unconstitutional.

An identical argument was considered and rejected in *State v. Sivak*, 105 Idaho 900, 674 P.2d 396 (1983), wherein we stated:

The "beyond a reasonable doubt" standard applies to the existence of aggravating circumstances, not to the process of weighing them against the mitigating circumstances, which must occur before the sentence is imposed.

105 Idaho at 905, 674 P.2d at 401. We reject the argument raised by Dunlap for the same reason we rejected it in *Sivak*.

## V.

### MITIGATING FACTORS

█ Dunlap contends that the district court incorrectly weighed various mitigating circumstances. Specifically, Dunlap argues that the district court, when weighing the mitigating circumstances against I.C. § 19–2515(g)(7), should have given more weight to Dunlap's mental condition and the fact that Dunlap cooperated with the authorities. Similarly, Dunlap argues that the district court, when weighing the mitigating circumstances against I.C. § 19–2515(g)(8), should have given greater consideration to the fact that Dunlap has no prior felony record and responds favorably to a structured environment.

In *State v. Pratt (James)*, 125 Idaho 546, 873 P.2d 800 (1993), we recently reaffirmed the rule that it is within the discretion of the district court whether or not to impose a sentence of death. "This discretion is a guided discretion, entirely 'within the structure established by the legislature....'" *Pratt (James)*, 125 Idaho at 565, 873 P.2d at 819 (citing *State v. Sivak*, 119 Idaho 320, 326, 806 P.2d 413, 419 (1990)). In this case, the district court determined that there existed two aggravating circumstances beyond a reasonable doubt. The district court then analyzed various mitigating factors and came to a conclusion as to which of the mitigating factors it would weigh against each of the aggravating circumstances. Such a process has been upheld in *State v. Pratt (James)*, 125 Idaho 546, 873 P.2d 800 (1993), and *State v. Leavitt*, 121 Idaho 4, 822 P.2d 523 (1991). The district court then concluded that the mitigating circumstances did not · outweigh each of the aggravating circumstances making the imposition of the death penalty in this case unjust.

Given that the district court followed the sentencing structure set forth by the legislature, we conclude that the district court properly exercised its discretion in arriving at its sentence in this case. *State v. Lewis*, 336 Idaho 123, 848 P.2d 394 (1993).

## VI.

### AUTOMATIC REVIEW UNDER
### I.C. § 19–2827

█ Pursuant to I.C. § 19–2827(c), this Court is required to independently review the sentence of death to determine: (1) whether it was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the evidence supports the trial court's finding of a statutory aggravating circumstance enumerated in I.C. § 19–2515; and (3) whether the sentence is exces-

sive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

We have already determined that the evidence supports the trial court's findings that Dunlap committed felony murder with the specific intent to kill and that Dunlap has a propensity to commit murder which will probably constitute a continuing threat to society. Furthermore, there is no indication that the sentence was a result of passion or prejudice or was given based on an arbitrary factor.

Regarding the third prong of our review, this Court makes a *de novo* determination of whether the sentence is proportional and just after independently reviewing: (1) the nature of, and the motive for, the crime committed; (2) the heinous nature of the crime; and (3) the nature and character of the defendant. *State v. Pratt (James),* 125 Idaho 546, 873

P.2d 800 (1993); *State v. Hoffman,* 123 Idaho 638, 851 P.2d 934 (1993).

In this case, the record shows that, while in Ohio, Dunlap shot and killed Bolanos in the neck and head with a cross-bow. Dunlap then took her car and credit card and headed west. Approximately ten days later, after running out of money, Dunlap robbed a bank in Soda Springs, Idaho. During the course of the robbery, Dunlap pointed a sawed-off shotgun at a range of less than two feet from Crane and pulled the trigger, killing her. A subsequent psychiatric evaluation of Dunlap reveals that he has an explosive personality, and is motivated by rage and anger. The objects of his anger are generally women. He is a threat to society in general and women in particular.

In comparing the nature of the crime and the nature of the defendant in this case with other similar cases,[5] we hold that the sen-

---

5. *State v. Pratt (James),* 125 Idaho 546, 873 P.2d 800 (1993); *State v. Pratt (Joseph),* 125 Idaho 594, 873 P.2d 848 (1993); *State v. Hoffman,* 123 Idaho 638, 851 P.2d 934; *State v. Orr,* 123 Idaho 55, 844 P.2d 684 (1992); *State v. Weinmann,* 122 Idaho 631, 836 P.2d 1092 (Ct.App.1992); *State v. Thomasson,* 122 Idaho 172, 832 P.2d 743 (1992); *State v. Brewer,* 122 Idaho 213, 832 P.2d 1148 (Ct.App.1992); *State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled in part by Card,* 121 Idaho at 432, 825 P.2d at 1088; *State v. Enno,* 119 Idaho 392, 807 P.2d 610 (1991); *State v. Sivak,* 119 Idaho 320, 806 P.2d 413 (1990); *State v. Paz,* 118 Idaho 542, 798 P.2d 1 (1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991), *overruled in part by Card,* 121 Idaho at 432, 825 P.2d at 1088; *State v. Smith,* 117 Idaho 891, 792 P.2d 916 (1990); *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *State v. Leavitt,* 116 Idaho 285, 775 P.2d 599, *cert. denied,* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989), *appeal after remand,* 121 Idaho 4, 822 P.2d 523 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992); *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299, *cert. denied,* 493 U.S. 922, 923, 110 S.Ct. 287, 290, 107 L.Ed.2d 267 (1989), *overruled in part by Card,* 121 Idaho at 432, 825 P.2d at 1088; *McKinney v. State,* 115 Idaho 1125, 772 P.2d 1219 (1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3292, 111 L.Ed.2d 800 (1990); *State v. Fetterly,* 115 Idaho 231, 766 P.2d 701 (1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989); *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied,* 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *State v. Beam,* 109 Idaho 616, 710 P.2d 526 (1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986); *State v. Stuart,* 110 Idaho 163, 715 P.2d 833 (1985); *State v. Bainbridge,* 108 Idaho 273, 698 P.2d 335 (1985), *appeal after remand,* 117 Idaho 245, 787 P.2d 231 (1990); *State v. Aragon,* 107 Idaho 358, 690 P.2d 293 (1984); *State v. McKinney,* 107 Idaho 180, 687 P.2d 570 (1984); *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Gibson,* 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Sivak,* 105 Idaho 900, 674 P.2d 396 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984); *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *State v. Major,* 105 Idaho 4, 665 P.2d 703 (1983); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *State v. Carter,* 103 Idaho 917, 655 P.2d 434 (1981); *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982); *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981), *appeal after remand,* 104 Idaho 809, 663 P.2d 1111 (1983); *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980); *State v. Padilla,* 101 Idaho 713, 620 P.2d 286 (1980); *State v. Fuchs,* 100 Idaho 341, 597 P.2d 227 (1979); *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979); *State v. Lindquist,* 99 Idaho 766, 589 P.2d 101 (1979), *appeal after remand,* 101 Idaho 688, 619 P.2d 1141 (1980).

tence of death imposed in this case is not excessive or disproportionate.

The judgment of the district court is affirmed.

TROUT, J., and FULLER, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

I concur with the majority's analysis in Part II only because of the rather odd circumstances of the agreement which Dunlap entered into. It is highly questionable as to whether the Ohio murder indictment alone, particularly in light of the presumption of innocence adhering to that Ohio crime, could support a finding beyond a reasonable doubt that Dunlap had committed the Ohio murder and thus that beyond a reasonable doubt he possessed the propensity to murder. However, pursuant to the plea agreement Dunlap agreed to the fact that he had committed the Ohio murder in the event the trial court found the Ohio indictment admissible. With that agreement in place, Dunlap is only positioned to challenge the *admissibility of* the indictment and related witness statements rather than the *weight* of the evidence, once admitted. I agree with the majority that the indictment is relevant, although barely, to the sentencing inquiry as to whether Dunlap has the propensity to murder and thus is admissible.

JOHNSON, Justice, concurring and concurring in the result.

I concur in parts I, II, III, IV, and V of the Court's opinion.

I concur in the result of part VI (Automatic Review Under I.C. § 19–2827). The approach I take in determining whether the death sentence imposed in this case is excessive or disproportionate is outlined in my concurring and dissenting opinion in *State v. Card*, 121 Idaho 425, 448–459, 825 P.2d 1081, 1104–1115 (1992). Appended to my opinion in the present case is an updated summary of the cases I have considered.

The cases I find most similar to this one so far as the crime is concerned are:

1. *State v. Card* (death penalty imposed).
2. *State v. Searcy* (determinate life sentence imposed)
3. *State v. McKinney* (death penalty imposed).
4. *State v. Bainbridge* (determinate life sentence imposed)
5. *State v. Rhoades* (Michelbacher and Baldwin cases) (death penalties imposed).

In *Searcy* and *Bainbridge*, the circumstances of the defendant were mitigating and seem to explain why the trial court did not impose the death penalty. On the basis of the comparison of *Card*, *McKinney*, and *Rhoades*, I find the death sentence imposed on Dunlap not to be excessive or disproportionate.

The cases I find most similar to this one so far as the circumstances of the defendant are concerned are:

1. *State v. Pizzuto* (death penalty imposed).
2. *State v. Paz* (death penalty imposed).
3. *State v. Lankford* (death penalty imposed).

On the basis of this comparison of these cases in which the circumstances of the defendant are similar to Dunlap, I find the death sentence imposed on Dunlap not to be excessive or disproportionate.

**APPENDIX TO *DUNLAP* OPINION OF JOHNSON, J.**

| CASE NAME & CITATION | CHARACTERISTICS OF DEFENDANT | CIRCUMSTANCES OF MURDER | CONVICTION AND SENTENCE BY TRIAL COURT | DISPOSITION BY IDAHO SUPREME COURT OR COURT OF APPEALS |
|---|---|---|---|---|
| *State v. Hoffman, 123 Ida-* | *Antisocial personality and low intelligence; problems* | *Defendant and cohorts took female* | *First-degree murder. Death* | *Affirmed.* |

| | | | | |
|---|---|---|---|---|
| ho 638, 851 P.2d 934 (1993). 1993 WL 16387 | with violating law since childhood; extensive record of criminal violence as adult; use and distribution of drugs; failed to take responsibility or show remorse for murder. | victim to remote area, where defendant slashed victim's throat; cohort stabbed victim; defendant and cohort buried victim with rocks; crushing blow of rock to head was cause of death. | penalty imposed. | |
| State v. Orr, 123 Idaho 55, 844 P.2d 684 (1992). | Drug dealer; involved in relationship with woman, who had been in relationship with victim; set up on drug possession charge by victim. | Defendant, woman, and victim travelled to Idaho from Illinois to relocate defendant because of drug possession charge; victim purchased shotgun for defendant; defendant shot victim with shotgun after victim threatened woman's life if she did not return to Illinois with him. | First-degree murder. Sentenced to term of life, with 25 years fixed. | Affirmed. |
| State v. Weinmann, 122 Idaho 631, 836 P.2d 1092 (Ct. App.1992). | 19 years old when sentenced; raised in foster care; lived in facility for seriously emotionally disturbed children; undersocialized conduct disorder with aggressive traits; history of antisocial behavior; as adult, committed or abetted a number of criminal activities; terminated from job for stealing food; "rolled' or mugged homosexuals for money; stole automobiles; did not stop cohort from killing and attempting to kill others. | Defendant and cohort (Brewer) met victim in park; defendant and cohort accepted victim's offer to stay at home and eat; cohort stabbed victim several times with butcher knife; defendant watched passively and did not stop cohort. | First-degree murder. Life sentence, with 25 years fixed. | Affirmed by Court of Appeals. |
| State v. Brewer, 122 Idaho 213, 832 P.2d 1148 (Ct.App. 1992). | 17 years old at time of murder; troubled background; dropped out of high school in tenth grade; used alcohol, marijuana, and other drugs since age 14; never held job; supported self by stealing; treated for emotional disturbance and released about one month before murder; charges pending in California for murder and attempted murder. | See Weinmann above; defendant stabbed victim 11 times to take money, credit cards, and vehicle. | First-degree murder. Sentenced to life, with 35 years fixed. | Affirmed by Court of Appeals. |
| State v. Thomasson, 122 Idaho 172, 832 P.2d 743 (1992). | 17 years old at time of murders; previously been in trouble with police. | Defendant shot and killed both of adoptive parents in home. | Two counts of first-degree murder. Sentenced to two consecutive life terms, with 20 years fixed. | Affirmed. |

| | | | | |
|---|---|---|---|---|
| *State v. Rhoades (Michelbacher case), 121 Idaho 63, 822 P.2d 960 (1991). Second rehearing denied 1/1/92.* | *See Rhoades (Baldwin case) below.* | *Defendant shot female victim.* | *First-degree murder. Death penalty imposed.* | *Affirmed.* |
| *State v. Card, 121 Idaho 425, 825 P.2d 1081 (1991).* | *28 years old at time of murders; never married; no children; living with mother and step-father; did not graduate from high school, but obtained GED; periodic employment as janitor, ranch hand, and general laborer; previously convicted of reckless driving and three charges of DUI; problem with marijuana and alcohol in high school; when 17 years old became reclusive, heard voices, acted scared; mental problems; spent time in psychiatric facility for psychotic disorder a few years before murders; determined mentally incompetent after murders; diagnosed schizophrenic; ruled competent before trial.* | *After incident with store clerk, defendant shot and killed couple who were parked near a store early in the morning newspapers for their route.* | *Two counts of first-degree murder. Death penalty imposed.* | *Affirmed.* |
| *State v. Leavitt, 121 Idaho 4, 822 P.2d 523 (1991) on appeal after remand in 116 Idaho 285, 775 P.2d 599 (1989).* | *Comes from law-abiding family; father, husband, and son; steadily employed; suffers from intermittent explosive disorder; lengthy criminal record, but no prior felony conviction; probably previously committed rape and arson; morbid sexual curiosity; frequent possession and use of knives; use of knives to increase satisfaction during sexual intercourse; no remorse or excuse for murder; model prisoner, using time to express self through artistry and poetry.* | *Defendant slashed and stabbed female victim with knife 15 separate times and removed victim's sexual organs removed by slashing.* | *First-degree murder. Death sentence reversed; case remanded for resentencing. Death penalty imposed on resentencing.* | *Affirmed.* |
| *State v. Enno, 119 Idaho 392, 807 P.2d 610 (1991).* | *18 years old male, suffered to a moderate degree form an anti-social personality disorder, severe alcoholic, troubled childhood.* | *Defendant and victim were drinking together at a bar after which they traveled to a remote area where victim apparently made sexual advances toward defendant. Victim taunted defendant after he refused her advances* | *First-degree murder. Sentenced to fixed life.* | *Affirmed.* |

| | | | | |
|---|---|---|---|---|
| | | which prompted defendant to choke victim until blood came out of her mouth. During the ensuing struggle victim and defendant ended up outside of the automobile after which defendant struck victim with a board and later repeatedly ran over her with the automobile. Defendant then burned the body of the victim with lighter fluid and charcoal. | | |
| State v. Rhoades, 120 Idaho 795, 820 P.2d 665 (1991). (Baldwin case) | Thirty-one-year-old male; unmarried; lived with parents; dropped out of school in ninth grade; physical problems caused by polio; worked in processing plant and drywall construction; abused alcohol and drugs; having physical difficulties on night of arrest; assumed to be result of drugs or intoxication. | Kidnapped female convenience store clerk, drove to secluded area; attempted to attack her; and later shot her as she was crawling away; left victim for dead. | Convicted of first-degree murder, kidnapping, robbery and use of a firearm. Death penalty imposed. | Affirmed. |
| State v. Pizzuto, 119 Idaho 742, 810 P.2d 680 (1991); overruled by State v. Card, 121 Idaho 425, 825 P.2d 1081 (1991). | Previously convicted of criminal sexual conduct and manslaughter in other states. Sociopath exhibiting "explosive features," violent individual, expressed no remorse, history of violent behavior. | Defendant robbed and murdered woman and her adult nephew in their cabin with a hammer; one of the victims was also shot, victims were burried in a shallow grave near the scene of the murders. | First-degree murder, felony murder, robbery. Death sentence imposed. | Affirmed. |
| State v. Searcy, 120 Idaho 882, 820 P.2d 1239 (Ct.App. 1991), appeal after remand in 118 Idaho 632, 798 P.2d 914 (1990). | Troubled childhood, addiction to cocaine, psychiatric evidence indicating lack of mental responsibility. Committed various crimes to support chemical dependency. | Defendant planned robbery of victim's grocery store in order to get money to buy cocaine. Defendant hid in store where he was later confronted by victim, a struggle followed during which defendant shot victim in the stomach. Defendant told victim that if she opened the safe, he would call an ambulance. Victim opened safe after which defendant placed a rifle to her head and shot and killed her. | First-degree murder, and robbery. Sentenced to determinate life sentence on first-degree murder. On remand, from first appeal, determinate life sentence imposed. | Affirmed by Court of Appeals. |

| | | | | |
|---|---|---|---|---|
| State v. Paz, 118 Idaho 542, 798 P.2d 1 (1990). | Prior manslaughter conviction in Oregon, showed no rehabilitation after previous fines, probation, incarceration and parole, high probability that Paz would remain unpredictable and irrational in overreacting to confrontation and likely to kill fellow inmates if imprisoned. | Shot and killed victim in restaurant after earlier engaging in verbal exchange with victim and two of victim's companions; companions seriously injured in shooting. | First Degree Murder. Death penalty imposed. | Affirmed. |
| State v. Smith, 117 Idaho 891, 792 P.2d 916 (1990). | Chemical dependency, dominated by his brother (deceased accomplice); various prior criminal activity and outstanding warrants. | Body of victim was discovered in a partially burned stolen Cadillac. Later, .22 and .38 caliber bullets were removed from the victim's body and fingerprints of defendant were found in the Cadillac. | First-degree murder, robbery, and third-degree arson. Fixed life sentence on conviction of first-degree murder and consecutive fixed-life sentence on robbery conviction. | Affirmed. |
| State v. Bainbridge, 117 Idaho 245, 787 P.2d 231 (1990); 108 Idaho 273, 698 P.2d 335 (1985). | Evidence was admitted indicating defendant's behavior and thinking were suggestive of organic brain disfunction possibly caused or enhanced by a severe head injury from a motorcycle accident, defendant was viewed as being good natured and eager to please, hypersuggestable to the influence of others, reading and writing problem although not retarded, 10th grade education. | Victim, a female cashier who was acquainted with defendant and Sivak was shot several times and stabbed numerous times while working at gas station, victim was also sexually assaulted, defendant along with co-defendant (Sivak) robbed store. | First-degree murder and robbery. Sentenced to two consecutive fixed-life sentences. | Affirmed. |
| State v. Lankford, 116 Idaho 860, 781 P.2d 197 (1989). | Aggressive antisocial personality prone to violence. | Defendant and brother robbed and murdered retired marine officer and wife while camping in Idaho County, victims held at gunpoint and killed with multiple blows to the skull from night stick. | Two counts of first-degree murders. Death penalty imposed. | Affirmed. |
| McKinney v. State, 115 Idaho 1125, 772 P.2d 1219 (1989); 107 Idaho 180, 687 P.2d 570 (1984). | Defendant claimed he was physically and sexually abused by his father as a child. | Defendant repeatedly shot victim, a recent acquaintance, with .22 caliber pistol after driving to an abandoned gravel pit presumably for target practice, victim was also robbed and car was stolen. The killing was done in a cold-blooded and callous fashion, sole motive was monetary gain, victim shot in the body and killed, execution style. | First-degree murder, conspiracy to commit murder; robbery; and conspiracy to commit robbery. Death penalty imposed. | Affirmed. |

| | | | | |
|---|---|---|---|---|
| *State v. Fetterly, 115 Idaho 231, 766 P.2d 701 (1988); 109 Idaho 766, 710 P.2d 1202 (1985).* | *Prior criminal record.* | *Along with co-defendant Windsor, was convicted of first-degree murder, burglary and grand theft for the robbery and stabbing death of the victim who they later dumped in the Snake River.* | *First-degree murder, burglary, and grand theft. Death penalty imposed.* | *Affirmed.* |
| *State v. Windsor, 110 Idaho 410, 716 P.2d 1182 (1985).* | *No formal criminal record or history of prior criminal activity, defendant cooperative, skills and ability which indicate defendant may ultimately be capable of maintaining employment and functioning as a productive member of society, troubled childhood.* | *Along with co-defendant Fetterly, was convicted of first-degree murder, burglary and grand theft for the robbery and stabbing death of the victim who they later dumped in the Snake River. Windsor did not commit actual act of stabbing victim.* | *First-degree murder. Death penalty imposed.* | *Sentence of death vacated because sentence was excessive and disproportionate.* |
| *State v. Scroggins, 110 Idaho 380, 716 P.2d 1152 (1985).* | *No history of violent criminal conduct, inadequate upbringing, age 18 at the time of crime (mental age was 13.8 years), failed to develop mature responses to stressful situations.* | *Defendant and co-defendant (Beam) were involved in the rape and subsequent murder of a 13-year-old female victim, the victim was drowned and throat was slashed, jury indicated that defendant committed only attempted rape and did not directly commit the crime of murder, defendant reported crime to the police.* | *First-degree murder; attempted rape. Death penalty imposed.* | *Sentence vacated, sentence of death was excessive and disproportionate to penalty imposed in similar cases.* |
| *State v. Stuart, 110 Idaho 163, 715 P.2d 833 (1985).* | *Defendant engaged in abuse of other women and their minor children prior to relationship with present girlfriend and her son, defendant had committed at least three prior rapes along with numerous examples of other violent behavior.* | *Defendant convicted in the beating death of a three-year-old boy, the son of his live-in girlfriend, evidence of numerous incidences of physical abuse of victim prior to death.* | *Murder by torture in first-degree. Death penalty imposed.* | *Affirmed.* |
| *State v. Beam, 109 Idaho 616, 710 P.2d 526 (1985).* | *The defendant abused drugs, was on parole for burglary when the murder was committed, had been exposed to and participated in prior sexually deviant behavior, had tortured animals, was impulsive, and lacked any adequate conscience.* | *The victim, a thirteen-year-old girl, was handcuffed and raped, semen was found in her vagina and rectum, the victim's throat was slashed and the cause of death was listed as drowning.* | *First-degree murder; rape. Death penalty imposed.* | *Affirmed.* |

| Case | Defendant | Crime | Charge/Sentence | Result |
|---|---|---|---|---|
| State v. Aragon, 107 Idaho 358, 690 P.2d 293 (1984). | At the time of the incident the defendant was calm, refused to aid the victim or seek help and began planning a cover-up of his involvement, passed criminal record including charges of child abuse and assault with a deadly weapon, lack of remorse over death of victim, no further description provided. | Victim, eight-month-old child and daughter of defendant's female roommate died from severe blows to the head administered by defendant while victim was in bathtub. | First-degree murder. Death penalty imposed. | Affirmed. |
| State v. Paradis, 106 Idaho 117, 676 P.2d 31 (1983). | Member of Spokane motorcycle gang, no further description provided. | Male and female victims, who both were acquainted with co-defendants, were seen together before their van was later seen driving up a sparsely populated mountain road in Idaho. Three men were later seen leaving the sparsely populated area, included in the three men was defendant. The bodies of victims were later found. Male had been beaten severely around the head, female had been strangled and placed in a stream bed, it was determined that male was killed in Washington while female was killed in Idaho. Defendant was acquitted of the murder of male and extradited to Idaho for the murder of the female. | First-degree murder. Death penalty imposed. | Affirmed. |
| State v. Gibson, 106 Idaho 54, 675 P.2d 33 (1983). | Extensive prior criminal record, capable of manipulation, remorse is questionable, background includes extensive use of drugs and/or alcohol, not able to cope with pressure and may act out against society again, dishonorable discharge from service, uncooperative while on prior probation. | See Paradis above, defendant acquitted in murder of male, extradited to Idaho for murder of female. | First-degree murder. Death penalty imposed. | Affirmed. |
| State v. Creech, 105 Idaho 362, 670 P.2d 463 (1983). | Defendant previously convicted of other murders, exhibited utter disregard for human life, propensity to commit murder, under sentence for first-degree murder at the time of his | While working as a janitor in prison, defendant engaged in argument with a fellow inmate. Defendant struck fellow inmate with | First-degree murder. Death penalty imposed. | Affirmed. |

| | | | | |
|---|---|---|---|---|
| | *actions.* | *sock containing batteries causing severe head injury and ultimate death of victim.* | | |
| *State v. Major, 105 Idaho 4, 665 P.2d 703 (1983).* | *Married, two children, heroin user.* | *Defendant and male victim had been drinking together in a local bar, defendant and victim left and went to victim's home, the body of the victim was found approximately three days later in his home, victim died from multiple stab wounds including numerous slashes to the throat. Defendant and his wife fled to California, were later arrested and extradited to Idaho.* | *First-degree murder. Fixed life.* | *Affirmed.* |
| *State v. Mitchell, 104 Idaho 493, 660 P.2d 1336 (1983).* | *Wife of victim, user of prescription drugs and alcohol.* | *Although it was initially suspected that victim had been murdered by strangulation during a burglary of victim and defendant's home, defendant later convicted in the contract killing of her husband.* | *First-degree murder. Indeterminate life sentence.* | *Affirmed.* |
| *State v. Needs, 99 Idaho 883, 591 P.2d 130 (1979).* | *Wife of victim, prior evidence of violent activity directed at victim.* | *Body of victim discovered partially burnt, without head and arms, wrapped in a bed sheet and covered by a door. Death of victim caused by either gun shots, decapitation, or a slit throat.* | *First-degree murder. Sentence of life imprisonment.* | *Affirmed.* |